IN RE WILLIS RAY MATNEY and PAMELA KAY MATNEY, Chapter 13 Debtors.
JOHN E. FITZGIBBONS, Appellant,
v.
SALLY ZEMAN, Trustee, Appellee.
BAP No. CO-08-058.
United States Bankruptcy Appellate Panel, Tenth Circuit.
March 11, 2009
Before CORNISH, Chief Judge, MICHAEL, and RASURE, Bankruptcy Judges.[1]

OPINION[*]
MICHAEL, Bankruptcy Judge.
Willis and Pamela Matney ("Debtors") hired John E. Fitzgibbons ("Attorney") to represent them in this somewhat routine Chapter 13 case. The only potentially complicating factor was a significant amount of past due taxes, penalties, and interest that Debtors owed the Internal Revenue Service ("IRS").[2] As it turned out, the case was not particularly complex. Ultimately, Attorney sought the bankruptcy court's approval of $13,750 in total compensation. After conducting an evidentiary hearing, the bankruptcy court allowed $4,750. Attorney brings this appeal. After review of the sparse record on appeal and applicable law, we affirm the fee award.

I. FACTUAL BACKGROUND[3]
Attorney filed Debtors' Chapter 13 petition on September 12, 2006. Debtors paid him a "basic services flat fee" of $2,250 in advance.[4] As a result, Attorney should have filed a fee disclosure statement within 15 days of filing the petition, as required by 11 U.S.C. § 329, and Federal Rule of Bankruptcy Procedure 2016(b) ("Fee Disclosure Statement").[5] Instead, Attorney waited over 14 months to file the Fee Disclosure Statement.[6]
The initial petition was a "bare bones" petition, and did not include the necessary Statement of Financial Affairs, Statement of Current Monthly Income, Employee Income Records, Proposed Chapter 13 Plan, and Schedules G, H, I & J.[7] Accordingly, the bankruptcy court issued a Notice of Deficiency on September 13, 2006, requiring the omitted information to be provided by September 28, 2006.[8] None of the omitted information was filed until October 11, 2006.[9] The initial proposed Chapter 13 plan was not filed until November 3, 2006,[10] 52 days after the petition was filed.[11]
The main dispute in this case centered around the tax claim filed by the United States of America, acting through the IRS. The record on appeal does not contain the IRS's proofs of claim.[12] However, at trial, the parties requested that the bankruptcy court take judicial notice of the claims register in this case, and it did so.[13] According to the bankruptcy court, in a proof of claim filed October 5, 2006, the IRS admitted that it considered approximately 80 per cent of its claim to be a general unsecured (and thus dischargeable) claim.[14] Attorney concluded it was necessary to file an adversary proceeding to determine the dischargeability of the IRS debt. On October 25, 2006, Debtors paid Attorney a retainer of $2,500 in connection with the adversary proceeding.[15] Again, Attorney failed to file the required Fee Disclosure Statement.
On November 20, 2006, Attorney filed an adversary complaint against the IRS, asserting both the secured and unsecured tax debts were dischargeable.[16] The complaint was not included in the record. Based on other documents, we gather that the thrust of Debtors' complaint was an objection to the validity of the IRS Notice of Tax Lien filed in Boulder County, Colorado, on October 25, 1999. The IRS's position was that the lien secured $62,594 of its claim.[17]
On November 21, 2006, Debtors filed a motion asking the bankruptcy court to stay plan confirmation proceedings pending outcome of the adversary proceeding against the IRS.[18] The bankruptcy court denied Debtors' motion, and soon thereafter also denied confirmation of the initial proposed Chapter 13 plan.[19] Over the next five months, Debtors filed three amended plans, all of which were objected to by Sally Zeman, the Chapter 13 trustee ("Trustee"), due to Debtors' failure to address their tax debts. Confirmation of each of these plans was denied by the bankruptcy court.[20]
In the mean time, Debtors and the IRS stipulated to dismissal of the adversary proceeding.[21] The stipulation was approved by order of the bankruptcy court dated February 26, 2007.[22] As part of the stipulation, Debtors agreed that the IRS's Notice of Tax Lien filed in 1999 perfected its interest in Debtors' personal property.[23] Additionally, the parties agreed that the amount of the IRS's secured claim in bankruptcy was only $14,594 because Debtors were not required to provide for the IRS as a secured creditor in their Chapter 13 Plan to the extent of their ERISA qualified retirement plan assets valued as of the bankruptcy petition date.[24] Further, the parties agreed that the IRS's lien continued as to those assets, and that the "IRS may collect up to the value of said ERISA plans after a discharge has been entered."[25]
On June 8, 2007, Debtors filed their fourth amended plan ("Plan"). The Plan drew no objections, and was confirmed by the bankruptcy court on July 3, 2007.[26] The record on appeal contains neither the Plan, nor the bankruptcy court's confirmation order.
Attorney filed his Chapter 13 fee application ("Fee Application") on September 20, 2007, seeking total fees of $13,750, inclusive of the $4,750 already received from Debtors. Attorney attributed the additional $9,000 in fees to his work in the adversary proceeding. The Fee Application was filed almost three months out of time. Under Colorado local bankruptcy rules, Attorney was required to file his fee application in this case no later than "15 days after the date of the entry of the Order confirming the Chapter 13 plan."[27]
Trustee objected to the Fee Application for a variety of reasons: 1) Attorney's failure to timely file a Chapter 13 plan and the subsequent need for four additional amended plans; 2) Attorney's failure to timely file Form B22C; 3) Attorney's failure to timely file a Fee Disclosure Statement; 4) Attorney's filing of an unnecessary adversary proceeding; and 5) Attorney's excessive time entries for certain legal tasks performed in the case.[28] In response, Attorney asserted that, in light of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the case was particularly difficult because it involved substantial tax liability, and the fees requested were reasonable under the circumstances.[29] In further response to the Trustee's objection to his Fee Application, Attorney filed the required Fee Disclosure Statement on December 14, 2007, approximately 14 months after first receiving compensation from Debtors and filing the Chapter 13 petition.[30] The Fee Disclosure Statement is not a part of the record on appeal.
A hearing on the Fee Application was held on February 4, 2008, during which Trustee testified as an expert that Attorney's requested fees were unreasonable. Trustee testified that the fees were unreasonable primarily because most, if not all, experienced Chapter 13 practitioners would have employed the "cram-down" process to value the IRS's secured claim, rather than filing the adversary proceeding to determine dischargeability.[31] Further, Trustee testified that a reasonable fee would be $4,600.[32] That figure represents the current District of Colorado presumptively reasonable fee of $3,000, plus an additional ten billable hours at $165 per hour attributable to work related to the IRS tax lien issue.[33]
Attorney objected to Trustee's expert testimony regarding the reasonableness of his fees. The bankruptcy court overruled the objection, noting that several of the questions that Attorney asked Trustee were sufficient to "open the door" to allow Trustee to testify on the issue of reasonableness of fees.[34] Attorney admits that, prior to the hearing on the Fee Application, he was informed Trustee would "testify concerning [Attorney's] representation in the bankruptcy case, the reasonableness of requested fees in this bankruptcy and representation by other attorneys in cases similar to this case."[35] Again, the pleading at issue is not part of the record on appeal.
By order dated March 26, 2008, the bankruptcy court awarded Attorney fees of $4,750, the amount already received from Debtors ("Order on Fee Application"). On April 4, 2008, Attorney timely filed a "Rule 7052, 9023 Motion to Reopen and Reconsider" ("Motion to Reconsider") the bankruptcy court's Order on Fee Application.[36] The bankruptcy court denied Attorney's Motion to Reconsider by order dated June 9, 2008 ("Order Denying Reconsideration").[37] The Motion to Reconsider and the Order Denying Reconsideration are missing from the record on appeal. Attorney now timely appeals both of the bankruptcy court's orders.

II. JURISDICTION
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[38] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado. The parties have thus consented to appellate review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[39] In this case, the bankruptcy court's Order on Fee Application and Order Denying Reconsideration have completely resolved the matter. Nothing remains for the bankruptcy court's consideration. Thus, the decision is final for purposes of review.[40]

III. STANDARD OF REVIEW
A bankruptcy court's "factual findings related to compensation awards under § 330 are reviewed under a clearly erroneous standard, and its ultimate decision to allow or disallow requested compensation is reviewed for abuse of discretion."[41] A factual finding is "clearly erroneous" when "`it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[42] Additionally, "[j]udicial review of the bankruptcy court's factual determinations in connection with a fee award is highly deferential . . ."[43] "Under the abuse of discretion standard[,] `a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[44]

IV. ANALYSIS

A. Order on Fee Application
On appeal, Attorney argues two bases for reversal of the bankruptcy court's Order on Fee Application. First, Attorney complains that Trustee's testimony on the reasonableness of his fees should not have been admitted as expert testimony. Second, Attorney asserts the bankruptcy court erred in disallowing more than one-half of his requested fees because the adversary proceeding against the IRS was necessary and beneficial to Debtors, and therefore reasonable. We reject both arguments.

1. Trustee's expert testimony
In his opening brief, Attorney argues that Trustee should not have been allowed to testify as an expert because she was not disclosed as an expert witness as required by Federal Rule of Civil Procedure 26(a)(2).[45] Attorney also argues for exclusion of Trustee's testimony because Trustee did not file a written report that he perceives was required by Federal Rule of Procedure 26(a)(2)(B).[46] These provisions of the Federal Rules of Civil Procedure apply in this contested matter only if the bankruptcy court specifically directed that they be applicable.[47] There is nothing in the record to verify that the bankruptcy court in fact ordered them applicable in this matter. However, in her answer brief, Trustee admits that "the bankruptcy court, in its Minutes of Proceedings dated December 3, 2007, ordered disclosure of expert testimony and pretrial disclosures pursuant to Rule 26(a)(2) and (3) of the Federal Rules of Civil Procedure."[48] Trustee also admits she did not comply with these procedural requirements. An appellate court reviews the lower court's "evidentiary rulings, including its decision to admit or deny expert testimony, for an abuse of discretion."[49] We find no such abuse for the following reasons.
Attorney fails to demonstrate how he was prejudiced by Trustee's discovery omissions. Attorney admits that Trustee filed a list of witnesses indicating that Trustee would be called to testify "concerning [Attorney's] representation in the bankruptcy case; the reasonableness of requested fees in this bankruptcy [case;] and representation by other attorneys in cases similar to this case."[50] Based upon those portions of the transcript provided to us, it appears that Trustee actually testified only to matters falling within this disclosed description of testimony. In addition, the bankruptcy court found that Attorney waived his right to object to Trustee's testimony because Attorney asked Trustee for her opinions about the reasonableness of fees at least six times.[51] There is nothing in the abridged transcript before us that suggests error in the bankruptcy court's finding of waiver. Appellant has provided us with nothing to support "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[52]
A careful review of the Order on Fee Application reveals that the bankruptcy court did not rely solely on Trustee's "expert testimony" in determining a reasonable fee. The bankruptcy court specifically stated:
[Attorney] provided the Court with certain exhibits (including case law and scholarly articles) upon which he purportedly relied in determining to file the Adversary Proceeding. The Court has reviewed these exhibits and finds none of them, per se, support the filing of an adversary proceeding under circumstances similar to this case. Although the case and articles have some applicability to this case because they address the dischargeability of taxes in a Chapter 13 context, their relevance under the specific facts of this case is questionable. In addition, at the evidentiary hearing, it became evident that [Attorney] was not cognizant of the fact he could treat the IRS's claims through the plan.[53]
Additionally, much of what Trustee testified to is within the bankruptcy court's knowledge. As more than one court has opined:
On the issue of reasonable fees, "the court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of testimony of witnesses as to value."[54]
We reject Attorney's argument regarding the admissibility of Trustee's expert testimony.

2. Reasonableness of requested fees
Section 330(a)(4)(B) provides as follows:
In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.[55]
The critical question in awarding fees to counsel in Chapter 13 cases is whether the services were of benefit and necessity to the debtor.[56] Generally speaking, in bankruptcy cases, the lodestar method, namely number of hours expended times customary hourly rate, is used to determine attorney fees.[57] The lodestar figure may then be adjusted up or down depending on various factors.[58] The leading case regarding adjustment of the lodestar figure, Johnson v. Georgia Highway Express, Inc., outlined twelve factors to be used to determine a reasonable attorney fee.[59] The Tenth Circuit has adopted the Johnson factors in deciding the reasonableness of attorney fees.[60] These twelve factors are:
1. The time and labor required.
2. The novelty and difficulty of the question.
3. The skill requisite to perform the legal service.
4. The preclusion of other employment by the attorney due to the acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation, and ability of the attorneys.
10. The "undesirability" of the case.
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases.[61]
Most of the Johnson factors have now been codified in §330(a)(3).[62]
In its Order on Fee Application, the bankruptcy court appropriately analyzed the Johnson factors in determining whether Attorney's requested fees were reasonable. In doing so, the bankruptcy court specifically found that: 1) a large portion of the time billed by Attorney was unnecessary;[63] 2) the case did not involve novelty or difficulty as compared to other Chapter 13 cases;[64] 3) Debtors' tax liability did not require advanced skill in order to propose a confirmable plan;[65] 4) Attorney provided insufficient evidence regarding whether other employment opportunities were precluded;[66] 5) the case involved a mixed flat and hourly fee;[67] 6) the case involved no expedited or emergency circumstances justifying an elevated fee request;[68] 7) the result obtained in the case weighs in favor of a higher than typical fee award; and 8) Attorney had general experience with respect to Chapter 13 cases, but admitted this was the first case he had handled involving substantial tax liability.[69] We review these findings under the clearly erroneous standard. A factual finding is "clearly erroneous" when "`it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[70] Attorney points to no evidence in the record to convince us that any of the bankruptcy court's findings are clearly erroneous.
The bankruptcy court also addressed Trustee's other objections to Attorney's Fee Application. The bankruptcy court found that the case was not handled in a timely or particularly competent manner.[71] Further, with regard to Attorney's time entries, the bankruptcy court found that the detail and description of the legal services were woefully inadequate and prevented it from determining whether the time was reasonable.[72] Again, Attorney has not demonstrated that these findings are clearly erroneous. Any and all of these findings support the decision of the bankruptcy court to award a fee lower than the requested amount.
The bankruptcy court correctly explained that Attorney's non-compliance with § 329 and Rule 2016 in failing to timely file the required Fee Disclosure Statement could serve as a basis for disallowing any and all compensation.[73] Attorney did not file the Fee Disclosure Statement until: 1) after he had untimely filed his Fee Application; and 2) after Trustee had objected to the Fee Application, in part, on the grounds of his failure to file a Fee Disclosure Statement. Timely filing of the required Fee Disclosure Statement serves the important policy of protecting both creditors and debtors against overreaching attorneys, thus justifying the potentially stiff penalty of disgorging fees already received.[74] In this case, notwithstanding Attorney's failure to timely file a Fee Disclosure Statement, the bankruptcy court permitted him to keep the $4,750 already paid by Debtors.
The bankruptcy court's "ultimate decision to allow or disallow requested compensation is reviewed for abuse of discretion."[75] "Under the abuse of discretion standard[,] `a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[76] When, as here, the bankruptcy court would have been well within its discretion to deny Attorney all requested fees and order disgorgement, it is difficult to understand how the award of $4,750 constitutes an abuse of discretion.
In sum, we conclude that the bankruptcy court: 1) used the appropriate factors to examine and evaluate the Fee Application; 2) conducted a thorough analysis of all of the bases for Trustee's objection; 3) did not make any findings of fact that the record on appeal demonstrates were clearly erroneous; and 4) issued a well-supported and well-reasoned decision. Therefore, the bankruptcy court did not abuse its discretion in making its fee award to Attorney.

B. Order Denying Reconsideration
On April 4, 2008, Attorney timely filed his Motion to Reconsider the bankruptcy court's Order on Fee Application.[77] The bankruptcy court entered its Order Denying Reconsideration on June 9, 2008.[78] The Notice of Appeal filed by Attorney can be interpreted as appealing both the Order on Fee Application and the Order Denying Reconsideration.[79] However, neither the Motion to Reconsider, nor the Order Denying Reconsideration are contained in the record on appeal provided by Attorney.
As appellant, Attorney has the burden of providing this appellate court with an adequate record for review.[80] As a part of that record, Attorney is required to include in his appendix the order from which the appeal is taken and the motion and response on which the court rendered decision.[81] "Indeed, when the record on appeal fails to include copies of the documents necessary to decide an issue on appeal, this Court is unable to rule on that issue and may summarily affirm the bankruptcy court."[82] Because Attorney failed to provide an adequate record for our review, we are compelled to affirm the bankruptcy court's Order Denying Reconsideration.

V. CONCLUSION
The Order on Fee Application and the Order Denying Reconsideration are affirmed.
RASURE, Bankruptcy Judge, concurring in result:
I concur that the bankruptcy court must be affirmed, but on the ground that the appendix tendered by Attorney does not contain sufficient excerpts of the record to conduct a meaningful review of the issues appealed.
Attorney presented two issues for review: (1) whether the bankruptcy court erred in allowing expert testimony of the Trustee which had not been disclosed as required by Federal Rule of Civil Procedure 26(a)(2),[1] and (2) whether the bankruptcy court erred in refusing to award any attorney fees for Attorney's prosecution of the adversary proceeding in which Attorney obtained a stipulation from the IRS regarding the amount, priority and dischargeability of the Debtors' income taxes.[2]
With respect to the first issue, Attorney argues that the bankruptcy court allowed the Trustee to testify as an expert on the issue of the dischargeability of taxes in a Chapter 13 case notwithstanding her failure to disclose the substance of her proposed testimony on that issue in her pretrial disclosures. In its Order on Fee Application, the bankruptcy court relied heavily on the Trustee's opinion that the adversary proceeding was unnecessary and services related to it were not compensable.[3] Arguably, Attorney may have been prejudiced because he was not afforded notice that the Trustee would give such an expert opinion and therefore did not obtain his own expert on the issue of dischargeability of taxes in a Chapter 13 case. The majority concludes that the bankruptcy court found that Attorney waived his right to object to the Trustee's testimony as an expert because "Attorney asked Trustee for her opinions about the reasonableness of fees at least six times."[4] Because the complete transcript was not furnished in the appendix, I cannot determine what particular questions Attorney asked that might have led the bankruptcy court to conclude that Attorney waived his objection to undisclosed expert testimony regarding whether the adversary proceeding was necessary to address dischargeability of the taxes, nor can I render a legal conclusion as to whether such questions would have constituted waiver of Attorney's Rule 26 objection.
With respect to the second issue on appeal, I believe that the bankruptcy court's conclusions that the adversary proceeding was unnecessary, and that the Debtors could have obtained the same relief through the confirmation process, is a mixed question of law and fact. Mixed questions of law and fact are reviewed under either the clearly erroneous standard or the de novo standard, "depending on whether the mixed question involves primarily a factual inquiry or the consideration of legal principles."[5]
The bankruptcy court found the adversary proceeding unnecessary based on its and the Trustee's belief that the unsecured portion of the taxes was a priori dischargeable because the IRS filed a proof of claim admitting that approximately eighty percent of its claim was unsecured. In its Order on Fee Application, the bankruptcy court stated: "the proof of claim filed by the IRS . . . prior to the date [Attorney] filed the Adversary Proceeding, admitted $288,422.86 of its tax claim was considered by the IRS to be an unsecured general claim, thereby conceding the dischargeability of this amount."[6] Because unsecured federal income taxes can be excepted from a Chapter 13 discharge in certain instances under Section 1328(a),[7] the fact that the IRS conceded that the bulk of its claim was unsecured was not necessarily dispositive of dischargeability.[8]
Attorney did not include in his appendix the IRS's proofs of claim, the adversary complaint, the IRS's answer, the installment agreement, or other evidence presented to the bankruptcy court concerning the timing of the assessment of the taxes, or regarding the nature of the taxes (and perhaps penalties and interest). In the absence of an appendix sufficient for meaningful review of the facts that the bankruptcy court considered in concluding that the IRS "conceded" that its claim was dischargeable, that dischargeability was not a legitimate issue in the case, and that the Debtors did not benefit from the adversary proceeding, the bankruptcy court must be summarily affirmed.[9]
NOTES
[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[2] The total debt owed to the IRS was in excess of $350,000. The taxes related to tax years 1991-1994. See Chapter 13 Fee Application at ¶ 2, in Appellant's Corrected Appendix ("Appellant's App.") at 31.
[3] Pursuant to Federal Rule of Bankruptcy Procedure 8009(b) and 10th Circuit BAP Local Rules 8006-1(a) & 8009-1(b), as appellant, Attorney is required to bring all documents necessary for appellate review before this Court in an appendix to his brief (hereafter "record on appeal"). As recently explained by the Tenth Circuit Court of Appeals, we, like other courts, colloquially refer to the appendix as the record on appeal, but technically it is not. Milligan-Hitt v. Bd. of Trs. of Sheridan Court Sch. Dist. No. 2, 523 F.3d 1219, 1231 (10th Cir. 2008). However, as also explained by the Tenth Circuit, it is well established that "we have no obligation to go further and examine documents that should have been included . . . in the appendix," id., and "[a]n appellant who provides an inadequate record does so at his peril." Burnett v. Sw. Bell Tel., L.P., No. 07-3126, at *1, 2009 WL 237702 (10th Cir. Feb. 3, 2009) (internal quotation marks omitted). In this case, we specifically decline to go beyond the appendix provided by Attorney. Because the majority of the necessary documents have not been included, the following recitation of the facts has been extrapolated from what little record Attorney has provided, and from the bankruptcy court's findings of fact in its Order on Fee Application.
[4] Chapter 13 Fee Application & Exhibit E thereto, in Appellant's App. at 30, 40. Debtors paid Attorney a total of $2,524 prior to filing, which included the Chapter 13 filing fee. "Basic services" are those described in Exhibit A to Second Amended General Procedure Order 2001-1 of the United States Bankruptcy Court for the District of Colorado. The Second Amended General Procedure Order requires that these basic services be provided in a timely and competent manner.
[5] Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, Title 11 of the United States Code, and all future references to a rule are to the Federal Rules of Bankruptcy Procedure.
[6] The Fee Disclosure Statement was not filed until December 14, 2007. See Order on Fee Application at 10, in Appellant's App. at 55.
[7] Id. at 1, in Appellant's App. at 46.
[8] See Docket No. 5, in Appellant's App. at 20.
[9] See Docket Nos. 9-13, in Appellant's App. at 19.
[10] See Docket No. 23, in Appellant's App. at 18.
[11] Even after the initial Chapter 13 plan was filed, basic petition information continued to have to be amended. For example, one of the Debtor's social security numbers was corrected on December 4, 2006, and an amended Form 22C was filed December 11, 2006. See Docket Nos. 34 & 38, in Appellant's App. at 16.
[12] It appears that an original proof of claim was filed on October 5, 2006, and then subsequently amended on October 20, 2006, and February 12, 2007. See Appellant's Opening Br. at 5.
[13] Order on Fee Application at 5 n.8, in Appellant's App. at 50.
[14] Id. at 5, in Appellant's App. at 50. It appears that the IRS's total claim was $354,004.49, and the amount it admitted was dischargeable was $288,422.86. See Chapter 13 Fee Application at ¶ 2, in Appellant's App. at 31.
[15] Chapter 13 Fee Application at ¶ 2, in Appellant's App. at 31.
[16] See Docket No. 25, in Appellant's App. at 17; Chapter 13 Fee Application in Appellant's App. at 31.
[17] See Stipulation to Dismiss, in Appellant's App. at 26-27, Chapter 13 Fee Application, in Appellant's App. at 31, and Transcript of Proceedings Held on February 4, 2008 ("Tr.") at 45, in Appellant's App. at 57.
[18] Order on Fee Application at 2, in Appellant's App. at 47.
[19] Id.
[20] See Docket Nos. 36, 55 & 76, in Appellant's App. at 16, 14 & 10. See also Order on Fee Application at 2, in Appellant's App. at 47.
[21] Stipulation to Dismiss, in Appellant's App. at 26.
[22] See Docket No. 57, in Appellant's App. at 13.
[23] Stipulation to Dismiss, in Appellant's App. at 26-27.
[24] Id. at 27.
[25] Id.
[26] See Docket No. 97, in Appellant's App. at 7.
[27] See Order on Fee Application at 2 n.5, in Appellant's App. at 47. The application was filed 90 days out of time. The $4,750 paid by Debtors represents the $2,250 basic services fee plus the $2,500 retainer for the IRS adversary proceeding.
[28] Order on Fee Application at 2-3, in Appellant's App. at 47-48.
[29] Id. at 3, in Appellant's App. at 48.
[30] Id. at 10, in Appellant's App. at 55.
[31] Id. at 4-5, in Appellant's App. at 49-50.
[32] Id. at 10-11, in Appellant's App. at 55-56.
[33] Id. The $50 discrepancy is unexplained. For Chapter 13 cases filed after January 1, 2007, the presumptively reasonable fee in the District of Colorado is $3,000. See General Procedure Order 2007-2 of the United States Bankruptcy Court for the District of Colorado. The presumptively reasonable fee technically applicable to this case is $1,800. See General Order 2004-1 of the United States Bankruptcy Court for the District of Colorado. 
[34] Tr. at 69, ll. 5-6, in Appellant's App. at 62. We are unable to review the entire transcript of the February 4, 2008, hearing due to Attorney's failure to provide in his appendix "all transcripts, or portions of transcripts, necessary for the court's review," as required by 10th Circuit BAP Local Rule 8009-1(b)(5). Attorney provided only pages 45, 48, 58-59, 65, and 69-73, which consist of parts of Trustee's testimony on direct, cross, redirect, and recross examination. Additionally, Attorney did not provide the transcript cover page or index, so there is no way to determine the length of the entire transcript, or what parts have been left out. Our review is limited to those portions of the transcript contained in the Appendix.
[35] Appellant's Opening Br. at 17 (internal quotation marks omitted).
[36] See Docket No. 120, in Appellant's App. at 5.
[37] See Docket No. 132, in Appellant's App. at 3.
[38] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.
[39] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[40] See In re Tahah, 330 B.R. 777, 780 (10th Cir. BAP 2005).
[41] In re Commercial Fin. Svcs., 298 B.R. 733, 747 (10th Cir. BAP 2003), aff'd, 427 F.3d 804 (10th Cir. 2005) (footnote omitted).
[42] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting LeMaire ex rel. Le Maire v. United States, 826 F.2d 949, 953 (10th Cir. 1987)).
[43] In re Commercial Fin. Svcs., 298 B.R. at 747.
[44] Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).
[45] Appellant's Opening Br. at 16-17. Federal Rule of Civil Procedure 26(a)(2) provides as follows:

(2) Disclosure of Expert Testimony.
(A) In addition to the disclosures required by paragraph (1), a party shall disclose to the other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
Fed. R. Civ. P. 26(a)(2) (2006).
[46] Appellant's Opening Br. at 17. Federal Rule of Civil Procedure 26(a)(2)(B) provides in pertinent part:

(2) Disclosure of Expert Testimony.
(B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.
Fed. R. Bankr. P. 26(a)(2)(B) (2006).
[47] Fed. R. Bankr. P. 9014(c).
[48] Appellee's Answer Br. at 7.
[49] Marquez v. City of Albuquerque, 399 F.3d 1216, 1222 (10th Cir. 2005) (internal quotation marks omitted).
[50] Appellant's Opening Br. at 17.
[51] Tr. at 69, ll. 5-6, in Appellant's App. at 62.
[52] Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).
[53] Order on Fee Application at 6, in Appellant's App. at 51 (citation and footnote omitted). This Court has also reviewed the authorities provided by Attorney and agrees with the bankruptcy court that they do not directly support his argument.
[54] Schilling v. Moore, 286 B.R. 846, 850 (W.D. Ky. 2002) (quoting In re WHET, Inc., 61 B.R. 709, 713 (Bankr. D. Mass. 1986)).
[55] § 330(a)(4)(B).
[56] In re Phillips, 291 B.R. 72, 80 (Bankr. S.D. Tex. 2003).
[57] In re Miniscribe Corp., 309 F.3d 1234, 1243 (10th Cir. 2002).
[58] Id.
[59] Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 498 U.S. 87 (1989) (hereafter "Johnson").
[60] In re Permian Anchor Svcs., Inc., 649 F.2d 763, 768 (10th Cir. 1981) (citing Johnson) (also commenting that "[n]early identical guidelines have been adopted by the American Bar Association Code of Professional Responsibility, DR 2-106").
[61] Johnson, 488 F.2d at 717-19.
[62] Section 330(a)(3) provides:

In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
[63] Order on Fee Application at 5, in Appellant's App. at 50.
[64] Id. at 6, in Appellant's App. at 51.
[65] Id.
[66] Id.
[67] Id. at 7, in Appellant's App. at 52.
[68] Id.
[69] Id. at 7-8, in Appellant's App. at 52-53.
[70] Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting LeMaire ex rel. Le Maire v. United States, 826 F.2d 949, 953 (10th Cir. 1987)).
[71] Order on Fee Application at 8, in Appellant's App. at 53.
[72] Id. at 9, in Appellant's App. at 54.
[73] Id. at 9-10, in Appellant's App. at 54-55. Section 329(a), Debtor's transactions with attorneys, provides:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
Rule 2016, Compensation for Services Rendered and Reimbursement of Expenses, provides:
(b) Disclosure of compensation paid or promised to attorney for debtor Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.
Fed. R. Bankr. P. 2016(b).
[74] In re Kisseberth, 273 F.3d 714, 721 (6th Cir. 2001).
[75] In re Commercial Fin. Svcs., 298 B.R. 733, 747 (10th Cir. BAP 2003), aff'd, 427 F.3d 804 (10th Cir. 2005).
[76] Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting McEwen v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).
[77] See Docket No. 120, in Appellant's App. at 5.
[78] See Docket No. 132, in Appellant's App. at 3. This entry reflects that Attorney's motion was a "Rule 7052, 9023 Motion to Reopen and Reconsider Order."
[79] See Notice of Appeal, in Appellant's App. at 80.
[80] Anstine v. Centex Home Equity Co., LLC (In re Pepper), 339 B.R. 756, 760-61 (10th Cir. BAP 2006).
[81] Fed. R. Bankr. P. 8006 & 8009(b); 10th Cir. BAP L.R. 8006-1(a) & 8009-1(b)(5). Specifically, Rule 8009(b) provides:

(b) Appendix to Brief.
If the appeal is to a bankruptcy appellate panel, the appellant shall serve and file with the appellant's brief excerpts of the record as an appendix, which shall include the following:
(1) The complaint and answer or other equivalent pleadings;
(2) Any pretrial order;
(3) The judgment, order, or decree from which the appeal is taken;
(4) Any other orders relevant to the appeal;
(5) The opinion, findings of fact, or conclusions of law filed or delivered orally by the court and citations of the opinion if published;
(6) Any motion and response on which the court rendered decision;
(7) The notice of appeal;
(8) The relevant entries in the bankruptcy docket; and
(9) The transcript or portion thereof, if so required by a rule of the bankruptcy appellate panel.
Fed. R. Bankr. P. 8009(b) (emphasis added). We note that the bankruptcy court's Order Denying Reconsideration is technically before this Court because it was a part of the preliminary transmission of the record accomplished pursuant to 10th Circuit BAP Local Rule 8006-1(a). However, we are still without Attorney's Motion to Reconsider, see Docket No. 120, in Appellant's App. at 5, and Trustee's response thereto, see Docket No. 128, in Appellant's App. at 4, and thus the inadequate record on appeal precludes our review.
[82] Lopez v. Long (In re Long), 255 B.R. 241, 245 (10th Cir. BAP 2000).
[1] See Appellant's Opening Br. at 17-20.
[2] See id. at 20-23.
[3] See Order on Fee Application at 4-5, in Appellant's App. at 49-50.
[4] Majority Opinion at 12.
[5] Armstrong v. Comm'r, 15 F.3d 970, 973 (10th Cir. 1994).
[6] Order on Fee Application at 5, in Appellant's App. at 50.
[7] Section 1328(a) excepts from discharge taxes "of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B) [and] (1)(C) . . . of section 523(a)." 11 U.S.C. § 1328(a)(2). These include taxes assessed upon a late return that was filed within the two year period prior to the bankruptcy petition, and taxes assessed after the debtor "made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(B) and (C).
[8] A claimant is not required to, and generally does not, indicate in its proof of claim whether it believes its claim is dischargeable. Moreover, in the case of taxes and penalties, the claimant does not need to file an adversary proceeding to have its claim declared non-dischargeable, as Section 523(a)(1) is self-executing. Thus, a debtor who is uncertain whether taxes and penalties will be discharged, or desires to confirm that the taxes will be discharged upon completion of a Chapter 13 plan, may indeed desire to obtain a binding determination of dischargeability through an adversary proceeding. It appears that in the Stipulation to Dismiss filed in the adversary proceeding, the Debtors may have benefitted from a stipulation that "1991 through 1994, inclusive, taxes are discharged upon completion of Chapter 13 plan payments." Stipulation to Dismiss, in Appellant's App. at 27.
[9] See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir. 1992).